David E. Amaya (SBN 259418)
E-Mail: damaya@fisherphillips.com
Sean L. McKaveney (SBN 331374)
E-Mail: smckaveney@fisherphillips.com
Andrew B. Dizon (SBN 357720)
E-Mail: adizon@fisherphillips.com
**FISHER & PHILLIPS LLP**
4747 Executive Drive Suite 1000
San Diego, California 92121
Telephone: (858) 597-9600
Facsimile: (858) 597-9601

Attorneys for Defendant
SOUTHWEST AIRLINES CO.

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

RAYMOND PITSICK-PEREZ, on behalf of himself, all others similarly situated, and on behalf of the general public,

Plaintiffs,

v.

SOUTHWEST AIRLINES CO.; and DOES 1-100,

Defendants.

CASE NO.: 3:25-cv-02079-DMS-BLM
*Unlimited Jurisdiction*

*[Removed from San Diego Superior County Court Case No. 25CU036084C]*

**DEFENDANT SOUTHWEST AIRLINES CO.'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Date: October 24, 2025
Time: 1:30 p.m.

SDSC Complaint Filed: July 8, 2025
Trial Date: Not Set

## I. INTRODUCTION

Plaintiff's Opposition to Southwest Airlines' Motion to Dismiss fundamentally misconstrues controlling California Supreme Court precedent and Plaintiff concedes that Southwest employees can elect "another mode of commuting to work altogether." Opp'n ECF No. 7-12 at 5:12, Opp'n ECF No. 9-12 at 5:12. Under *Frlekin v. Apple, Inc.,* 8 Cal.5th 1038, 1052 (2020) and *Morillion v. Royal Packing Co.*, 22 Cal.4th 575 (2000), Plaintiff's admission is dispositive in confirming the commute time in this case is not compensable hours worked.

In *Frlekin*, the Supreme Court rejected Apple's suggestion to use the commute-to-work analytical framework used in *Morillion* to analyze whether the *at* work exit searches were compensable. Here, Plaintiff commits the same misstep that Apple did in *Frlekin*; Plaintiff wants this Court to utilize *Frlekin's at* work analysis in the context of this commute-to-work case. Like the Supreme Court did in *Frlekin*, this Court should reject Plaintiff's suggestion that it apply the *at* work analytical framework to a commute-to-work case.

## II. *FRLEKIN* DID NOT DEPART FROM *MORILLION'S* MANDATORY/VOLUNTARY TEST FOR DETERMINING WHETHER COMPENSATION IS OWED FOR COMMUTING TO WORK

Plaintiff's discussion of *Frlekin* ignores the California Supreme Court's explicit finding that "there are inherent differences between cases involving time spent traveling to and from work and time spent *at* work." *Frlekin*, 8 Cal.5th 1038, 1051 (2020). The Court explained, "[c]ommuting is an activity that employees ordinarily initiate on their own, prior to and after their regular workday, and is not generally compensable. [Citations.]" *Id.* The Court further justified applying different frameworks to different contexts because "generally speaking, it would not seem to matter to the employer how or when an employee travels, so long as the employee arrives on time. Thus, unless the employer ***compels*** the employee to use a certain kind of transportation or employer-provided transportation, it would be, without more, unreasonable to require the employer to pay for travel time." *Id.*

(Emphasis added.) It further explained that "because Apple's business interests and level of control are greater in the context of an onsite search, the mandatory/voluntary distinction applied in *Morillion* is not dispositive in ***this*** context." *Id*. (emphasis added). Of course, by implication – and as it was in *Morillion* – it ***is dispositive*** in the commute context.[1]

Further, in *Morillion*, in which the employer required employees to be transported on the employer's buses and "prohibited employees from using their own transportation to get to and from the" worksite, the Court held that "the mere fact that the employer requires the employee's activity, is determinative" in finding whether the time spent on the employer's buses is compensatory time. *Morillion*, 22 Cal.4th 575, 579, 587. In other words, if the employees in *Morillion* could have chosen "another mode of commuting to work altogether" – which they were completely prohibited from doing – then the time on the buses would not have been compensable. Opp'n ECF No. 7-12 at 5:12, Opp'n ECF No. 9-12 at 5:12.

Significantly, in *Morillion* the California Supreme Court approved of a fifth circuit decision, *Vega v. Gasper*, 36 F.3d 417, 425 (5th Cir. 1994), that held a two hour, one-way shuttle ride was not compensable time because the employees were not required to ride an employer's bus as part of their commute and "employees were free to choose – rather than required – to ride their employer's buses to and from work" thereby creating "a dispositive, distinguishing fact." *Morillion*, 22 Cal.4th 589 n.9.

The Supreme Court's approval of *Vega* demonstrates the realities involved in the commute context, and the Court's explicit recognition that employees can choose where they live in proximity to the workplace and how they commute to that workplace. Therefore, the fact that the parking lot where Southwest employees choose to park is two miles away from Terminal 1 is inconsequential under the Supreme Court's analytical

---

[1] The *Frlekin* Court further made this clear in its decision when it stated that "case law suggests that the employee's ability to avoid an employer-controlled activity is not dispositive ***outside of the commuting context." Id.*** at 1053. (Emphasis added.) Later in its decision the Court further stated that "at least with regard to cases involving *onsite* employer-controlled activities, the mandatory nature of an activity is not the only factor to consider." *Id.* at 1056. Once again, the Court only departed from the dispositive mandatory/voluntary test for cases "outside of the commuting context."

framework established for commute cases. Employees are free to live in the downtown San Diego area and walk, ride a bike, or take a bus to the Terminal. Southwest wields no control over employees' choice in how they arrive to the worksite, unlike the *Morillion* employer.

This framework was further applied in *Overton* in which the Court of Appeal held that the key factor in determining compensable time was whether the employer "*required* its employees who were assigned parking in the [employee] lot to park there and take the shuttle." *Overton v. Walt Disney Co.*, 136 Cal.App.4th 26, 271 (2006). Because employees were able to bypass the lot entirely, "[that] fact alone" demonstrated that parking in the lot and taking the shuttle was not mandatory for employees scheduled to work at the worksite. *Id.* As such, due to the voluntary nature of the activity, the court considered the time spent traveling on the shuttle from the employee parking lot as not compensable.

Here, as Plaintiff admits, employees could avoid riding the shuttle from the parking lot to the airport by "choosing another mode of commuting to work altogether." Opp'n ECF No. 7-12 at 5:12, Opp'n ECF No. 9-12 at 5:12. The fact that they choose to park in the free employee parking lot and take the airport provided shuttle to get to the terminal that is two miles away completely disposes of Plaintiff's case.[2] Indeed, this lack of control due to employees' choice in how they commute to work is entirely dispositive under *Frlekin*, *Morillion*, and *Overton.*

## III. <u>IF THE ACTIVITY PRIMARILY BENEFITS THE EMPLOYEE, THE SUPREME COURT BELIEVES THE ACTIVITY IS MORE LIKELY NOT COMPENSABLE</u>

In evaluating "hours worked" control clause cases, the California Supreme Court finds it compelling to assess whether the activity primarily benefits the employer or employee. *Frlekin, supra,* at 1052. The Court likewise approved of the Ninth Circuit decision in *Rodriguez v. Taco Bell Corp.*, which "described *Morillion* as holding that

---

[2] Plaintiff's position regarding the shuttle from the lot is puzzling. Plaintiff alleges the only way for Plaintiff and Class Members to get to the airport from this parking lot is to take a shuttle without any mention of the fact that they can, for example, walk from the lot to the terminal. Of course, as a practical matter, walking would make no sense because even at a brisk pace it would take approximately 40 minutes to walk 2 miles, e.g., a brisk walk is done at approximately 3 miles per hour. See https://www.cdc.gov/physicalactivity/basics/measuring/index.html.

compensation for time spent was not required "[i]f employers offered a benefit or service that employees could choose, but were not required to take advantage of." *Id.* at 1052 (quoting *Rodriguez v. Taco Bell Corp.*, 896 F.3d 952, 957 (9th Cir. 2018)). Here, the optional free parking and airport shuttle benefits employees. Accordingly, this should further persuade the Court that the time waiting for, and taking, the shuttle is not compensable.

## IV. THE SUPREME COURT ENCOURAGES THE PROVISION OF EMPLOYEE BENEFITS LIKE PROVIDING A PARKING LOT OR SHUTTLE TO EMPLOYEES

The Court explained in *Frlekin* that "[i]n *Morillion*, we characterized optional employer-provided transportation as an employee benefit that should be encouraged as a policy matter," such that when an optional activity primarily benefited the employee, it should be dispositive in demonstrating compensable time. *Id*. at 1051-1052. Indeed, in *Morillion*, the Court stated, "employers may provide optional free transportation to employees without having to pay them for their travel time, as long as employers do not require employees to use this transportation." *Morillion*, 22 Cal.4th at 594.

This legal principal was applied in *Overton* and equally parallels the facts alleged in this matter. In *Overton*, the Court of Appeal found the employees' use of "free shuttle buses as an optional benefit to employees" not compensable because the buses were not mandatory, and the buses were a benefit to employees. *Frlekin*, 8 Cal.5th at 1052. The Supreme Court distinguished the facts in *Frlekin* by pointing out that onsite exit searches of employees' bags to prevent loss prevention, "are imposed mainly for [the employer's] benefit." *Id*. at 1053.

Like the Disneyland employees in *Overton*, the shuttles are provided to the Southwest employees who self-drive to work and at no cost to the employee. This employee benefit vastly contrasts the exit search conducted by Apple which was highly curated to benefit the employer and protect its interest in loss prevention.

///

///

## V. PLAINTIFF FAILS TO ALLEGE EMPLOYEES RECEIVED DISCIPLINE IF THEY FAILED TO TAKE THE SHUTTLE

Discipline for failing to comply with the company policy, along with optionality, is another factor considered when evaluating whether an activity should be compensated as compensable time. In *Frlekin*, the Court found that because the employer's written policy "[provided] that failure to comply with its bag-search policy [could] lead to disciplinary action, up to and including termination," the threat of discipline for noncompliance strongly suggested that employees were under the employer's control and therefore, the activity should be considered compensable. *Frlekin*, 8 Cal.5th at 1053. Likewise, the employer in *Morillion*, prohibited the employees "from using their own cars, subjecting them to verbal warnings and lost wages if they did so." *Morillion*, 11 Cal.4th at 587. As such, the California Supreme Court, considered this threat of discipline when evaluating whether employees were under the employer's control during "travel between the designated departure points." *Id.*

Conversely, nowhere in Plaintiff's Opposition nor Complaint does Plaintiff allege that employees are subject to discipline if they do not take the shuttle or when "choosing another mode of commuting to work altogether." Opp'n ECF No. 7-12 at 5:12, Opp'n ECF No. 9-12 at 5:12. Unlike the employees in *Frlekin* and *Morillion*, in which the threat of discipline loomed over their noncompliant actions, here employees who elect to commute by other means harbor no fear of reprisal. As such, this factor strongly suggests employees are not under control because Southwest does not direct or command employees to commute to work by the shuttle from the lot.

## VI. PLAINTIFF CANNOT ALLEGE THAT HE WAS UNDER COMPENSABLE CONTROL WHEN WAITING FOR AND RIDING THE SHUTTLE TO THE WORKSITE

Plaintiff's Complaint and Opposition has insufficiently plead facts to demonstrate that Plaintiff was under compensable control when waiting for, and riding, the shuttle to the airport. In addition to the dispositive factors discussed above, Plaintiff admitted in his Opposition that employees could arrive to work by "choosing another mode of commuting

to work altogether." Opp'n ECF No. 7-12 at 5:12, Opp'n ECF No. 9-12 at 5:12. Furthermore, Plaintiff's reliance on *Ramirez v. HV Global Management Corporation* is entirely misplaced. The facts of *Ramirez*, are distinct from the current matter such that employees were required to park in an employee parking lot, were not allowed to commute to work by any other means, and there was no employee shuttle involved. *Ramirez v. HV Glob. Mgmt. Corp.*, No. 21-CV-09955-BLF, 2023 WL 4410944 at *2 (N.D. Cal. July 6, 2023). Further, the district court's analysis highlighted the distinct factual difference between its matter and *Overton* such that in *Ramirez* employees were required to park in the employee lot and were prohibited from arriving to work by other modes of transportation. As such, in *Ramirez*, the court found the employees were under compensable control because, unlike *Overton*, the employees were not "free to choose forms of transportation which bypassed [the employee] lot entirely (train, bus, being dropped off, vanpool)." *Id*. (quoting *Overton*, 136 Cal.App.4th at 271). Thus, because the employer disallowed other means of commute, the district court in drawing all reasonable inferences, found the Plaintiff adequately plead that transit time may be compensable.

The same cannot be said here. As Plaintiff explicitly made clear in his Opposition, employees are not limited to driving and parking in the lot and may elect "another mode of commuting to work altogether." Opp'n ECF No. 7-12 at 5:12, Opp'n ECF No. 9-12 at 5:12. Though Plaintiff alleges that employees were required to take the shuttle upon parking in the lot, this allegation by itself is insufficient because employees have the option to commute to work as they see fit. As stated in *Ramirez*, the "the level of the employer's control over its employees …is determinative as to whether an activity constitutes hours worked." *Id.* (quoting *Morillion*, 22 Cal.4th at 575). Here, Southwest does not control whether its employees commute to the worksite via car are required to park in the parking lot, nor are they limited from commuting to work by other means as was the case in *Ramirez*. As such, Plaintiff's reliance on *Ramirez* is misplaced, and his Complaint and Opposition fail to plead sufficient facts that he was under compensable control in waiting for and riding the shuttle to the airport from the parking lot.

## VII. PLAINTIFF'S DERIVATIVE CAUSES OF ACTION LIKEWISE FAIL AS A MATTER OF LAW

As argued above, and despite his Opposition, Plaintiff fails to sufficiently plead a cause of action in his Complaint for unpaid straight time wages. As such, his derivative claims for failure to provide accurate wage statements (second cause of action), failure to pay all wages due at the time of termination (third cause of action), and for violations of California's Unfair Competition Law (fourth cause of action) likewise fail.

Therefore, Plaintiff's derivative claims should be dismissed.

## VIII. CONCLUSION

For the foregoing reasons, Southwest respectfully requests that Plaintiff's Complaint be dismissed in its entirety for failure to state a claim for relief, pursuant to Rule 12(b)(6).

Dated: October 17, 2025     **FISHER & PHILLIPS LLP**

By: */s/ David E. Amaya*
David E. Amaya
Sean L. McKaveney
Andrew B. Dizon
Attorneys for Defendant
SOUTHWEST AIRLINES CO.

**CERTIFICATE OF SERVICE**

I, the undersigned, declare that I am over the age of 18 years, employed in the County of San Diego, State of California, and not a party to the within action. I am employed with the law offices of Fisher & Phillips LLP and its business address is 4747 Executive Drive, Suite 1000, San Diego, California 92121.

On the date below, I served the following document entitled **DEFENDANT SOUTHWEST AIRLINES CO.'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S COMPLAINT** on all the appearing and/or interested parties in this action as follows:

| | |
|---|---|
| David Mara, Esq. (SBN 230498)<br>Matthew Crawford, Esq. (SBN 310230)<br>**MARA LAW FIRM, PC**<br>2650 Camino Del Rio North, Suite 302<br>San Diego, California 92108 | Phone: (619) 234-2833<br>Fax: (619) 234-4048<br>Email: dmara@maralawfirm.com<br>mcrawford@maralawfirm.com<br>Attorneys for Plaintiff, Raymond Pitsick-Perez |

☒ **[by ELECTRONIC SUBMISSION]** - I served the above listed document(s) described via the United States District Court's Electronic Filing Program on the designated recipients via electronic transmission through the CM/ECF system on the Court's website. The Court's CM/ECF system will generate a Notice of Electronic Filing (NEF) to the filing party, the assigned judge, and any registered users in the case. The NEF will constitute service of the document(s). Registration as a CM/ECF user constitutes consent to electronic service through the court's transmission facilities.

I declare that I am employed in the office of a member of the State of California at whose direction the service was made. Executed on October 17, 2025, at San Diego, California.

Lisa St. Lawrence

Lisa St. Lawrence